# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**WILLIAM F. SEVERINO, III,**

    Plaintiff,

v.

**NEW JERSEY DEPARTMENT OF HUMAN SERVICES,** *et al.*,

    Defendants.

Case No. 23–22595–ESK–SAK

OPINION

**KIEL, U.S.D.J.**

    **THIS MATTER** is before the Court on defendants New Jersey Department of Human Services (Department), Sarah Adelman, and Elisa Neira's (Moving Defendants) motion to dismiss (Motion). (ECF No. 4.) Plaintiff William F. Severino, III filed an opposition (ECF No. 5) to which Moving Defendants replied (ECF No. 6). For the following reasons, the Motion will be GRANTED IN PART and denied to the extent that Moving Defendants seek dismissal of all claims with prejudice.

    **I.    BACKGROUND AND PROCEDURAL HISTORY**

    Plaintiff is a New Jersey citizen and applicant for WorkFirst New Jersey general assistance and emergency assistance. (ECF No. 1 pp. 10, 11.) Adelman was the commissioner of the Department during all relevant times and Neira served as the Department's commissioner of social services. (*Id.*)[1]

    Plaintiff applied for general and emergency assistance in March 2023 and took part in a phone interview with a caseworker on April 3, 2023. (*Id.* p. 11.) The caseworker purportedly told plaintiff that he needed to work in order to

---

[1] Moving Defendants' supporting brief refers to Neira as a "former employee[]." (ECF No. 4–1 p. 10.)

receive assistance to which plaintiff responded that he was disabled, required a MED-1 form,[2] and needed to attend eviction court the following week—which he was instructed by the caseworker to skip.  (*Id.*)  Plaintiff also spoke with a separate caseworker regarding emergency assistance and was denied without any reason provided and without receiving copies of policies and regulations as requested.  (*Id.* p. 12.)

Plaintiff called work the following week and informed them that he had to attend court and that he was waiting to receive a MED-1 form. (*Id.*) Plaintiff's application for general assistance was denied for failure to attend work on May 1, 2023 by employees of the Middlesex County Board of Social Services (Board) despite plaintiff's contention that he had an excusable reason under the applicable code and the fact that the Board did not provide a MED-1 form.  (*Id.*)  Caseworkers did not answer plaintiff's phone calls to attempt to file an appeal, so plaintiff mailed his appeal on May 6, 2023. (*Id.*) Plaintiff thereafter attempted to obtain a MED-1 form and reapply for general and emergency assistance, but was "given the run around" by Board employees, prompting him to write a letter to the governor's office on June 1, 2023 to complain of discriminatory behavior and the failure to send him a MED-1 form. (*Id.*)

A caseworker contacted plaintiff on June 19, 2023, was unhappy that plaintiff wrote to the governor's office, and mailed a MED-1 form to plaintiff. (*Id.*)  Plaintiff's physician filled out his MED-1 form on June 23, 2023 and plaintiff reapplied for general and emergency assistance by emailing a caseworker.  (*Id.*)  The caseworker responded that plaintiff had failed to

---

[2] The complaint does not explain what a MED-1 form is or its necessity.  It appears based on the Court's review of the New Jersey Administrative Code that MED-1 forms are used to document the certification of a physician that an individual is unable to engage in regular work activities due to a chronic illness, infirmity, or mental or physical disability or impairment expected to last for more than 12 months.  *See* N.J.A.C. 10:90–4.10(a)(2).

2

provide proof of a Supplemental Security Income appeal and plaintiff responded that he was first filing for reconsideration prior to appeal. (*Id.*)

Plaintiff emailed and sent tort notifications to the Board on July 10, 2023. (*Id.*) He was, again, denied general and emergency assistance on July 26, 2023, this time due to failure to send proof of his Supplemental Security Income case. (*Id.*) Plaintiff emailed his reconsideration paperwork to the caseworker that same day. (*Id.*) On July 30, 2023, plaintiff emailed the Department at an open email address and then emailed complaints and tort notifications to Adelman and Neira but did not receive a response. (*Id.* p. 13.) He then reapplied for general and emergency assistance. (*Id.*)[3]

Plaintiff filed the instant complaint against Moving Defendants, the Board, and individual Board employees in New Jersey Superior Court – Law Division in Middlesex County on September 1, 2023. (*Id.* pp. 10–16.) The complaint purports to be brought under the United States and New Jersey constitutions, tort-liability statutes, and New Jersey common law and asserts six counts. (*Id.*) Relevant to the instant Motion, Count 1 alleges that Moving Defendants failed to implement or follow appropriate policies, customs, and practices in deliberate indifference to plaintiff's constitutional rights; implicitly or explicitly adopted policies, customs, and practices such as unreasonable training in assisting individuals with mental disabilities with obtaining federal benefits; and failure by the Department to adequately train Adelman and Neira. (*Id.* p. 13.) Count 2 alleges negligence and negligent supervision premised on Adelman and Neira breaching their duty of care to properly investigate the discrimination of plaintiff—who identifies as a gay, white, Republican male; the Department's failure through its employees to adequately

---

[3] Plaintiff has since applied for and received general assistance but has not received emergency assistance. (ECF No. 5 p. 2.) Moving Defendants acknowledge that that this approval may moot at least some of plaintiff's claims, but do not seek dismissal on that basis. (ECF No. 6 p. 9 n. 1.)

train Adelman and Neira on matters of discrimination and conspiracy such as refusing to send MED-1 forms; and the Department's failure to instruct, supervise, control, and discipline co-defendants relating to harassment plaintiff has allegedly faced and the deprivation of his statutory rights, privileges, and immunities. (*Id.* pp. 13, 14.)[4]

Moving Defendants removed this action from New Jersey Superior Court to this District on November 22, 2023 on the basis that plaintiff's complaint invoked constitutional claims under 42 U.S.C. §1983 (Section 1983) and the Court thus has original jurisdiction pursuant to 28 U.S.C. § 1331. (*Id.* p. 2.) Moving Defendants thereafter filed the instant Motion on December 13, 2023 (ECF No. 4) to which plaintiff filed an opposition (ECF No. 5) and Moving Defendants thereafter replied (ECF No. 6).

---

[4] Plaintiff's complaint is separated into two "complaints." (ECF No. 1 pp. 13–15.) "Complaint One" is directed toward the Department and its employees and Counts 1 and 2 thereunder allege failure to implement or follow appropriate policies, customs, and practices and negligence and negligent supervision. (*Id.* pp. 13, 14.) "Complaint Two" is directed toward the Board and Counts 3 and 4 mirror Counts 1 and 2, with Counts 5 and 6 alleging retaliation and intentional infliction of emotional distress (IIED), respectively. (*Id.* pp. 14, 15.) Count 4 names the Department (*id.* p. 15) and Counts 5 and 6 refer to "all defendants," (*id.*) and it is unclear to the Court whether plaintiff is referring to all defendants affiliated with the Board or all defendants named in this action. Moving Defendants have interpreted the complaint as asserting Counts 5 and 6 against them as well as the Board. (ECF 4–1 p. 13.) While the complaint can be fairly read as only asserting Counts 1 and 2 against Moving Defendants based on the manner in which it is organized, I ultimately conclude that plaintiff's claims fail against Moving Defendants for the same reasons no matter whether Counts 5 and 6 are included. If plaintiff elects to file an amended complaint, he is reminded of the importance of pleading with sufficient clarity with respect to which counts are asserted against which defendants. *See Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (noting that a plaintiff's burden under Federal Rule of Civil Procedure 8 is not onerous but nonetheless the plaintiff must provide fair notice of the claim and the grounds upon which it rests).

## II. STANDARD AND PARTY ARGUMENTS

### A. Motions to Dismiss Pursuant to Rule 12(b)(6)

Prior to the filing of a responsive pleading, a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive dismissal under Rule 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" *Doe v. Princeton Univ.*, 30 F.4th 335, 341 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)), and—accepting the plaintiff's factual assertions, but not legal conclusions, as true—"'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged,'" *id.* at 342 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts further evaluate the sufficiency of a complaint by "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### B. Party Arguments

Moving Defendants urge the Court to abstain from adjudicating this matter, citing the primary-jurisdiction doctrine and considerations including the fact that the general- and emergency-assistance processes have an administrative-appeals procedure that plaintiff has sought to bypass and issues relating to courts' potential micromanagement of assistance processes, namely a lack of familiarity. (ECF 4–1 pp. 19–24.) On the merits, Moving Defendants first assert that—to the extent that plaintiff seeks monetary damages for violation of his civil rights—Moving Defendants are not individuals amenable to suit for monetary damages pursuant to Section 1983 and the New Jersey

5

Civil Rights Act (Civil Rights Act). (*Id.* pp. 14–19.) Second, plaintiff improperly seeks to hold Moving Defendants vicariously liable for the conduct of the Board and its employees, according to Moving Defendants, but has failed to identify any specific policy, custom, or practice that has led to the alleged violation of plaintiff's rights. (*Id.* pp. 24–26.) Third, Moving Defendants assert that plaintiff's claims against them in their individual capacities are barred under the doctrine of qualified immunity and New Jersey Tort Claims Act (Tort Claims Act), namely for failure to identify a clearly established right that has been violated. (*Id.* pp. 26–34.) Finally, Moving Defendants argue that the Tort Claims Act bars plaintiff's tort claims because he has not averred compliance with notice requirements and that claims stemming from the denial of an issuance or approval of authorization are precluded. (*Id.* pp. 34–37.)

Plaintiff responds by questioning the point of having constitutions and statutes designed to protect rights when individuals are immunized from violating the rights of others and adds that if Adelman and Neira have been assigned Social Security numbers, they are persons who may be held accountable. (ECF No. 5 pp. 2, 3.) Plaintiff refutes Moving Defendants' position that the case is essentially a challenge to assistance denials, but rather argues that his case is premised on why he was denied assistance—namely lack of training, retaliation, and failure to intervene. (*Id.* p. 3.) Plaintiff denies that he bypassed any administrative process, but then adds that the fairness-hearing process is lengthy as compared to filing a complaint. (*Id.*) Finally—citing their statutory powers and duties—plaintiff claims that Adelman and Neira had personal involvement and a duty to address his denials and—citing the Tort Claims Act—asserts that Moving Defendants cannot be immune

6

because they did not act reasonably and the Department is liable for the acts or omissions of its employees. (*Id.* pp. 4–6.)[5]

## III. DISCUSSION

### A. <u>Primary-Jurisdiction Doctrine</u>

Before reaching the merits of plaintiff's claims and the Motion, I first consider whether abstention is appropriate pursuant to the primary-jurisdiction doctrine. I conclude that it is not.

The doctrine applies "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body …." *Raritan Baykeeper v. NL Industries, Inc.*, 660 F.3d 686, 691 (3d Cir. 2011) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)). Whether application is appropriate is determined by weighing four factors:

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made.

---

[5] Plaintiff asserts in his brief that this case ought to be remanded to Superior Court. (ECF No. 5 pp. 1, 2, 4.) A removed case may be remanded to state court if removal was procedurally defective or the federal court lacks subject-matter jurisdiction. *Farrell v. FedEx Ground Package Sys., Inc.*, 478 F. Supp. 3d 536, 540 (D.N.J. 2020). In so far as plaintiff may believe that removal was procedurally deficient, any such argument is untimely as his brief was filed more than 30 days after removal. *See* 28 U.S.C. § 1447(c); *Green Tree Servicing LLC v. Dillard*, 88 F. Supp. 3d 399, 400 n. 2 (D.N.J. 2015) (treating the alleged violation of the rule of unanimity as waived for failure to object within 30 days). Plaintiff further offers no support that the Court lacks subject-matter jurisdiction over his claims, which allege violations of his federal constitutional rights. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.")

*Id.* (quoting *Global Naps, Inc. v. Bell Atl.–N.J.*, 287 F. Supp. 2d 532, 549 (D.N.J. 2003)).

The recent decision in *Jackson v. Seifried*, Case No. 20–17410, 2023 WL 4627815 (D.N.J. July 19, 2023), is instructive. There, the plaintiff was an enrollee in the New Jersey Community Care Program administered by the Department's Division of Developmental Disabilities and asserted causes of action including claims under Section 1983 and the Civil Rights Act premised on allegations similar to those made by plaintiff such as failure to return calls, harassment, and lack of adequate training. *Jackson*, 2023 WL 4627815, at *1, 2. The court declined to apply the primary-jurisdiction doctrine based on the fact that the plaintiff's claims under Section 1983, the Civil Rights Act, and elsewhere did not involve discretionary decision-making by the Division of Developmental Disabilities. *Id.* at *3.

I find that a similar result is warranted here. First, though the issues underlying the complaint are the denials of plaintiff's assistance applications, his claims appear focused on harassment, discrimination, and deprivation of rights—all of which are familiar to the Court. *See Mason v. Coca-Cola Co.*, Case No. 09–00220, 2010 WL 2674445, at *2 (D.N.J. June 30, 2010) ("No technical expertise within the special province of the FDA is necessary for any of the determinations called for in this case."). To interpret the "the gravamen" of plaintiff's case as "truly an administrative matter, not a civil rights case" (ECF No. 4–1 p.23) would be to read past plaintiff's explicit allegations and disregard the Court's familiarity with applicable law.

Similarly, though the Department and Board certainly exercise discretion in the application process, the specific questions plaintiff brings before the Court are not clearly part of that discretion. *See In re Metformin Mktg. and Sales Prac. Litig.*, Case No. 20–02324, 2022 WL 970281, at *8 (D.N.J. Mar. 30, 2022) ("[B]ecause the questions at issue mainly involve state tort law, the

'question[s] at issue' here are not particularly in the discretion of the FDA." (second alteration in original) (citing *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 618 (S.D.N.Y. 2001))). I also do not find that there is a risk of inconsistent rulings. Plaintiff may have mooted, at least in part, some of his claims by seeking and receiving general assistance after the filing of his complaint, but it does not appear as though plaintiff has raised claims similar to those at issue here before a state administrative body. *See cf. Iowa Network Servs., Inc. v. AT&T Corp.*, Case No. 14–03439, 2015 WL 5996301, at *7 (D.N.J. Oct. 14, 2015) (finding a risk of inconsistency when a separate matter with issues that potentially overlapped with the instant case was before the Federal Communications Commission).

Lastly, Moving Defendants argue that plaintiff has unsuccessfully applied for assistance on multiple occasions and, unsatisfied with the results, has sought to bypass the administrative process in favor of filing this action. Plaintiff's rebuttal to whether he has exhausted his administrative remedies is unpersuasive. However, to the extent that plaintiff has continued to apply for assistance, it is not clear that he has raised similar harassment and discrimination argument and—in any case—prior applications are not alone determinative in the primary-jurisdiction analysis. *See In re Metformin Mktg. and Sales Prac. Litig.*, 2022 WL 970281, at *9. Furthermore, failure to utilize the administrative process does not preclude plaintiff's claims that Moving Defendants violated his rights through harassment, discrimination, and improper training. *See Shappell v. Camden Cnty. Bd. of Soc. Servs.*, Case No. 13–05287, 2014 WL 2434185, at *3, 4 (D.N.J. May 29, 2014) (agreeing with the plaintiff as a matter of law that her failure to seek an administrative hearing did not bar her Section 1983 claim, but concluding that the availability of the hearing contradicted her claim of lack of due process). Plaintiff may have been well-served engaging in the administrative process following the denials of his

applications, but I conclude that his failure to do so is insufficient to warrant abstention here.

### B. Plaintiff's Section 1983 and Civil Rights Act Claims

Plaintiff's federal constitutional claims are governed by Section 1983, *see Carpenter v. Chard*, 492 F. Supp. 3d 321, 328, 329 (D.N.J. 2020), and his state constitutional claims are governed by the Civil Rights Act, *see Castro v. New Jersey*, 521 F. Supp. 3d 509, 517 n.6 (D.N.J. 2021) (noting that the Civil Rights Act creates a private cause of action for violations of rights under both the United States and New Jersey Constitutions).

Section 1983 and the Civil Rights Act both provide for civil actions relating to the deprivation of rights by a person acting under the color of law. *See* 42 U.S.C. § 1983; N.J.S.A. 10:6–2(c). To make out a claim under Section 1983, a plaintiff must show "(1) that the plaintiff was deprived of a 'right or privileges secured by the Constitution or the laws of the United States' and (2) that plaintiff was deprived of his rights by a person acting under the color of state law." *Tucker v. City of Phila.*, 679 F. Supp. 3d 127, 136 (D.N.J. 2023) (quoting *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 464 (3d Cir. 1989)). The analyses for Section 1983 and Civil Rights Act claims are virtually identical, *Telzer v. Borough of Englewood Cliffs*, 783 F. App'x 253, 257 n.5 (3d Cir. 2019), such that courts within this District have reviewed such claims together, *see, e.g.*, *Carpenter*, 492 F. Supp. 3d at 328 n.1; *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 121 (D.N.J. 2017).

This standard is fatal to plaintiff's constitutional claims, at least in so far as he seeks monetary damages. Entities that are effectively arms of the state are not persons under Section 1983 and therefore cannot be sued for damages. *See Patterson v. Pa. Liquor Control Bd.*, 915 F.3d 945, 956 n.2 (3d Cir. 2019); *see also Durham v. Kelley*, 82 F.4th 217, 224 (3d Cir. 2023) ("States, and state

officers, if sued in their official capacities for retrospective relief, are not 'persons' subject to suit under §1983; however, state employees in their individual capacities may be liable for damages under §1983, even when the conduct in question is related to their official duties."); *Gonzalez v. N.J. Dep't of Child. and Fams.*, 545 F. Supp. 3d 178, 201, 202 (D.N.J. 2021) (finding that state agencies are immune from suit absent Eleventh Amendment waiver and that the Civil Rights Act similarly does not provide for claims against the state or arms of the state). The Department has been recognized as an agency of the state, and therefore not a person for Section 1983 purposes, within this District. *See Gattuso v. N.J. Dep't of Hum. Servs.*, 881 F. Supp. 2d 639, 646 (D.N.J. 2012) (granting dismissal of the plaintiffs' Section 1983 claims).

Though plaintiff may not seek monetary damages, he is not barred from seeking prospective injunctive relief. *See McCauley v. Univ. of the V.I.*, 618 F.3d 232, 241 (3d Cir. 2010); *see also Deal v. Velez*, 244 F. Supp. 3d 435, 442 (D.N.J. 2017) (recognizing that state officials sued for injunctive relief in their official capacities are persons under Section 1983 and that federal courts may enjoin state officers into prospective compliance with federal law with respect to the payment of public benefits). Plaintiff's claim for such relief is met by factual issues and pleading inadequacies.

First, plaintiff has been approved for general assistance. (ECF No. 5 p.2.) Therefore, his request for injunctive relief is arguably moot, in part, as plaintiff has received the prospective relief to which he may have been entitled.

Second, plaintiff may not rely on the actions of the Board or its employees alone in seeking to impose liability on Adelman or Neira. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (noting, in the context of Section 1983 claims against prison officials, that a plaintiff could not rely solely on *respondeat superior* liability and that the plaintiff failed to plead facts indicating that the defendants were personally involved in the alleged misconduct). Specific to

Adelman and Neira, plaintiff alleges that he emailed complaints and tort notifications to them that went unanswered and that they "implicitly and explicitly adopted and implemented careless and reckless policies, customs, or practices that included among other things displaying a pattern and practice of unreasonable training in the field of mentally and educationally challenged citizens in obtaining federal programs and filing and addressing tort notifications and complaints."[6]  (ECF No. 1 at p.13.)  It appears as though these emails may have been sent to an "open email" and it is unclear whether Adelman or Neira had access to the account or, even if so, their failure to respond would be actionable.

Furthermore, plaintiff has not identified any specific policy, custom, or practice that allegedly deprived him of his rights, let alone one initiated or acquiesced to by Adelman or Neira.  *See Gay v. Warren*, Case No. 11–05930, 2013 WL 2338697, at \*4, 5 (D.N.J. May 28, 2013) (noting that a supervisor's personal involvement may "be shown through allegations of personal direction or of actual knowledge and acquiescence" and that the plaintiff did not allege that the administrator was personally aware of or personally denied requests sent to the administration (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988))); *Dickerson v. SCI Graterford*, Case No. 10–07177, 2011 WL

---

[6] Plaintiff's emphasis on Moving Defendants' alleged adoption and implementation of policies, customs, or practices brings to mind the elements necessary to articulate a *Monell* claim.  *See Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 761 (3d Cir. 2019) (recognizing that a municipality may be held liable under Section 1983 when an official with final decision-making authority has issued an official proclamation, policy, or edict or, alternatively, a course of conduct that is so permanent and well-settled as to virtually constitute law that is violative of the plaintiff's rights).  To the extent that plaintiff intended to invoke this standard, "liability under *Monell* is limited to municipalities."  *Downey v. Pa. Dep't of Corrs.*, 968 F.3d 299, 310 n.10 (3d Cir. 2020).  Furthermore, with or without the applicable standard, plaintiff has failed to identify a specific policy or custom that has led to the alleged violations.

3862198, at *4 n.12 (E.D. Pa. Aug. 30, 2011) ("In an official-capacity action … the plaintiff must show that the state's 'policy or custom' played a part in the alleged violation. The plaintiff has identified no such state policy or custom." (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985))).

Plaintiff's claims against Adelman and Neira in their individual capacities fail for similar reasons. State officials sued in their individual capacities are persons amenable to suit under Section 1983. *See Kaul v. Christie*, 372 F. Supp. 3d 206, 244 (D.N.J. 2019); *see also Slinger v. New Jersey*, 366 F. App'x 357, 360 (3d Cir. 2010) ("[T]he Eleventh Amendment does not bar suits brought against state officials in their individual capacities, even if the actions which are the subject of the suit were part of their official duties …." (citing *Hafer v. Melo*, 502 U.S. 21 (1991))); *Ehrlich v. Alvarez*, Case No. 20–06398, 2021 WL 2284108, at *5 (D.N.J. June 4, 2021) ("Eleventh Amendment immunity does not bar suits against state officials sued in their individual capacity. Because damage remedies from a state official acting in his or her individual capacity would come from that individual's personal assets, the state would not be the real party of interest." (citations omitted)).

Adelman and Neira may not be immune from suit in their individual capacities, but plaintiff is still obligated to plead facts sufficient to establish claims against them. *See Torrey v. New Jersey*, Case No. 13–01192, 2014 WL 941308, at *12 (D.N.J. Mar. 11, 2014) (finding that plaintiff was obligated to allege sufficient facts to establish a Fourteenth-Amendment violation and that plaintiff failed to do so with respect to his property-interest claim). Similar to plaintiff's official-capacity claims, I find that plaintiff's allegations that Adelman and Neira did not respond to emails that may or may not have been sent to them and adoption or implementation of vague policies or customs do not meet his obligation. S*ee Jones v. Unknown D.O.C. Bus Driver and Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that the plaintiff's claims

13

against two state officials in their individual capacities failed because no facts were alleged to show that either were involved in the two relevant incidents); *Neal v. Powell*, Case No. 17–04768, 2018 WL 2754071, at *3 (D.N.J. June 8, 2018) (concluding that the plaintiff's "generalized allegation" that the individual defendant participated in, condoned, or acquiesced to the violative conduct was insufficient to make out a Section 1983 claim).

Plaintiff's Section 1983 and Civil Rights Act claims will therefore be dismissed. Dismissal will be with prejudice in so far as plaintiff seeks monetary damages against the Department or Adelman or Neira in their official capacities. *See Pagliaroli v. Ahsan*, Case No. 18–09683, 2019 WL 979244, at *2 (D.N.J. Feb. 28, 2019); *Campbell v. John*, Case No. 12–02750, 2016 WL 2347038, at *4 (D.N.J. May 4, 2016). Dismissal is without prejudice with respect to plaintiff's remaining Section 1983 and Civil Rights Act claims, namely his claims for injunctive relief and against Adelman and Neira in their individual capacities in recognition of the fact that plaintiff is proceeding *pro se* and may benefit from an opportunity to amend. *See Fleming v. Cape May Cnty.*, 475 F. App'x 811, 812 (3d Cir. 2012) ("Ordinarily, a District Court should not dismiss a [*pro se*] complaint without granting leave to amend.").

### C. **Plaintiff's Tort Claims**

Moving Defendants argue that the New Jersey Tort Claims Act serves as an alternative basis for dismissal of plaintiff's Section 1983 and Civil Rights Act Claims and, relevant to this section, his common-law claims. (ECF No. 4–1 pp. 33, 34.) [7] Specifically, Moving Defendants cite N.J.S.A. 59:3–3 which

---

[7] Moving Defendants also argue that qualified immunity bars plaintiff's tort and common-law claims on the basis that plaintiff has not adequately identified the violation of a clearly established right. (ECF No. 4–1 p. 33.) Moving Defendants assert that plaintiff "has no clearly established right to vicariously hold [them] liable for the denial of his GA and EA applications when the application process had irregularities either due to codefendants' actions or his own." (*Id.*) The complaint appears more directly focused on a right to the benefits themselves. Because Moving

provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3–3; *see also* N.J.S.A. 59:2–2(b) ("A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable."). The good-faith provision "immunizes employees who have acted (a) with objective reasonableness, or (b) with subjective good faith," with satisfaction of either standard warranting immunity. *See Gonzalez*, 545 F. Supp. 3d at 218 (citing *Toto v. Ensuar*, 952 A.2d 463, 470 (N.J. 2008)). Immunity requires an action by the public employee and an actual law that has purportedly been enforced. *See Maison v. NJ Transit Corp.*, 214 A.3d 189, 198 (N.J. Super. Ct. App. Div. 2019). Ordinary negligence is insufficient to support liability. *See Crystal Ice-Bridgeton, LLC v. City of Bridgeton*, 54 A.3d 848, 854 (N.J. Super. Ct. App. Div. 2012).

Plaintiff brings two causes of action, negligence and negligent supervision, that are clearly asserted against Moving Defendants in Count 2. "The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Robinson v. Vivirito*, 86 A.3d 119, 124 (N.J. 2014). A *prima facie* negligent supervision claim requires a showing "(1) that the employer 'knew or had reason to know of the particular unfitness, incompetence, or dangerous attributes of [the employees] who were involved,' (2) 'could reasonably have foreseen that such

---

Defendants' brief appears directed toward a right distinct from that which plaintiff claims entitlement to and because I will nonetheless dismiss plaintiff's tort claims on alternative grounds, I do not further consider Moving Defendants' qualified-immunity defense without prejudice to assertion of a similar such defense in the future. *See Custin v. Wirths*, Case No. 12–00910, 2016 WL 1157644, at *4 (D.N.J. Mar. 22, 2016) (noting that the parties did not dispute that medical benefits constitute a property right and concluding that whether a reasonable official would have understood certain actions as violative of due process were questions of fact that could be later raised at summary judgment).

qualities created a risk of harm to other persons,' and (3) the employer's negligence 'proximately caused plaintiff['s] injuries.'" *Lankford v. City of Clifton Police Dep't*, 546 F. Supp. 3d 296, 330 (D.N.J. 2021) (alterations in original) (quoting *Smith v. Harrah's Casino Resort of Atl. City*, Case No. A–0855–12T2, 2013 WL 6508406, at *3 (N.J. Super. Ct. App. Div. Dec. 13, 2013)).

To the extent that plaintiff's retaliation and IIED claims in Counts 5 and 6 are directed toward Moving Defendants, an IIED claim requires 1) that the defendant acted intentionally or recklessly, 2) the defendant's conduct was "so 'extreme and outrageous ... as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community,'" 3) proximate causation, and 4) "distress that is 'so severe that no reasonable man could be expected to endure it.'" *See Juzwiak v. Doe*, 2 A.3d 428, 433 (N.J. Super. Ct. App. Div. 2010) (omission in original) (quoting *Buckley v. Trenton Saving Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988)). Plaintiff's retaliatory action claim is premised, at least in part, on alleged fraud, which requires "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Suarez v. Eastern Int'l Coll.*, 50 A.3d 75, 85 (N.J. Super. Ct. App. Div. 2012) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)).[8]

---

[8] Plaintiff also alleges official misconduct as part of his retaliation claim. (ECF No. 1 p.15.) Official misconduct is a criminal offense, N.J.S.A. 2C:30–2, for which plaintiff has no private right of action, *Jones v. Somerset Cnty. Prosecutor's Off.*, Case No. 15–02629, 2017 WL 1337432, at *9 (D.N.J. Apr. 7, 2017) (dismissing an official-misconduct claim because the plaintiff did not have a private right of action to enforce the alleged violations of the New Jersey Criminal Code).

The actions alleged by plaintiff were made in furtherance of various provisions of the New Jersey Administrative Code pertaining to general- and emergency-assistance eligibility, according to Moving Defendants. (ECF No. 4–1 pp.33, 34; *see also Stoll v. Cumberland Cnty.*, Case No. A–3457–22, 2024 WL 2284950, at *7 (N.J. Super. Ct. App. Div. May 21, 2024) (concluding that the officer was acting to enforce New Jersey Administrative Code relating to prison security).) "In many cases, the question of 'good faith' presents a question of fact to be resolved at a hearing." *Roberts v. Gillikin*, Case No. 06–00088, 2007 WL 2066382, at *6 (D.N.J. July 13, 2007) (citing *Fielder v. Stonack*, 661 A.2d 231, 246 (N.J. 1995)). Nonetheless, I conclude that dismissal without prejudice is appropriate here due to similar pleading inadequacies as raised above. Plaintiff references a failure to properly investigate discrimination he has faced, failure to train Adelman and Neira in matters of discrimination, alleged retaliation due to his vocal opposition to corruption, and similar claims without providing necessary clarity as to whether the harm alleged was directly caused by these actions, whether the denials alone are the discrimination he complains of, or similar bonds between the facts alleged and his claims. Count 5 cuts off abruptly in the middle of an apparent allegation of fraud and the complaint reads as though plaintiff presumes the Court's familiarity with context and background necessary to analyze his claims. Plaintiff's recitation of the causes of action asserted and emphasis that his claims go beyond the mere denials of his assistance applications do little to orient the Court. (ECF No. 5.)

Plaintiff's complaint as drafted provides little beyond bare claims that he has been retaliated and discriminated against combined with recitations of some of the necessary elements for the causes of action asserted. Therefore,

including and beyond the applicability of immunities asserted,[9] dismissal is warranted. *See, e.g., Capps v. Dixon*, Case No. 19–12002, 2021 WL 2024998, at *8 (D.N.J. May 21, 2021) (finding that the plaintiffs failed to sufficiently

---

[9] In addition to immunity pursuant to N.J.S.A. 59:3–3, Moving Defendants assert that plaintiff's claims are barred by N.J.S.A. 59:8–4 and 59:8–8 for failure to plead compliance with notice requirements and N.J.S.A. 59:2–5 and 59:3–6 because plaintiff's claims relate to the denial of an approval. (ECF No. 4–1 pp. 34–37.) Failure to plead compliance with the Tort Claims Act's notice requirements may serve as grounds for dismissal. *See* N.J.S.A. 59:8–3(a) ("Except as otherwise provided in this section, no action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." (footnote omitted)); *Ingram v. Twp. of Deptford*, 858 F. Supp. 2d 386, 400 (D.N.J. 2012) ("The Plaintiff's complaint does not allege that she filed notice in accordance with the statute. Therefore, the Plaintiff's complaint fails to state a claim for negligence and assault and battery and must be dismissed."); *but see Castro v. Atl. Cnty.*, Case No. 15–02041, 2018 WL 3122065, at *9 n. 10 (D.N.J. June 25, 2018) (noting that the Tort Claims Act does not require that a plaintiff plead compliance in order to satisfy procedural requirements). Moving Defendants assert that plaintiff has failed to state that he has complied with notice requirements and it is unclear whether he actually did so. (ECF No. 4–1 p. 36.) I decline to look beyond the complaint at the pleading stage to dismiss plaintiff's claims on this basis. *See Doe*, 30 F.4th at 342 ("Generally, 'a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.'" (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997))). Further, N.J.S.A. 59:2–5 bars liability for injuries caused "by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or public employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked." N.J.S.A. 59:2–5. It appears, however, that N.J.S.A. 59:2–5 applies "to all phases of licensing function" and is therefore not readily applicable to plaintiff's assistance applications. *See Citadel Fed. Credit Union v. N.J. Motor Vehicle Comm'n*, Case No. A–4655–16T4, 2018 WL 2293198, at *2 (N.J. Super. Ct. App. Div. May 21, 2018) (quoting *Malloy v. State*, 388 A.2d 622, 625 (N.J. 1978)). I note that, while not raised by Moving Defendants, public entities and employees are not liable for injuries caused by the termination or reduction of benefits under public-assistance programs. N.J.S.A. 59:2–8; N.J.S.A. 59:3–12; *see also Phillips v. Cnty. of Essex Dep't of Citizen Servs.*, Case No. 16–05807, 2020 WL 5810558, at *3 (D.N.J. Sept. 30, 2020) (granting summary judgment on the plaintiff's claim that he was defamed by the agencies' wrongful denial of benefits). Though these sections of the Tort Claims Act may provide further support for dismissal, I do not rely on them as Moving Defendants have not raised such arguments and plaintiff has not had the benefit of responding to their potential application to this case.

allege that the supervisor defendants acted with at least recklessness or a nexus between the supervisor defendants' actions and the plaintiffs' claims); *Greer v. Cumberland Cnty. Prosecutor's Off.*, Case No. 14–03032, 2015 WL 3603986, at *4 (D.N.J. June 8, 2015) (concluding that the plaintiffs' bald assertions and legal conclusions that the defendants were negligent were insufficient apart from any immunity asserted, including N.J.S.A. 59:3–3).  Because I premise dismissal in significant part on inadequate pleading, dismissal will be without prejudice to plaintiff's filing of an amended complaint consistent with this opinion.

### IV.  CONCLUSION

For the foregoing reasons, Moving Defendants' Motion (ECF No. 4) will be GRANTED IN PART.  Plaintiff will be provided 30 days to file an amended complaint consistent with this opinion and the applicable Federal Rules of Civil Procedure and Local Civil Rules, namely Federal Rule of Civil Procedure 8 pertaining to proper pleading.   An appropriate order accompanies this opinion.

*/s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated:  June 25, 2024